CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED

SEP 23 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| WILLIAM E. BURKE,<br><br>*Plaintiff,*<br><br>v.<br><br>THE ROCHESTER CORPORATION,<br><br>*Defendant.* | CIVIL ACTION NO. 3:04CV00037<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

Before the Court is the United States Magistrate Judge's Report and Recommendation of May 5, 2005 on the Defendant's February 28, 2005 Motion for Summary Judgment. The Magistrate's Report recommends that this Court deny the Defendant's motion for summary judgment on the grounds that genuine issues of material fact exist that must be resolved by a trier of fact. On May 19, 2005, the Defendant filed timely objections to the Magistrate's Report. Accordingly, this Court has performed a *de novo* review of the portions of the Magistrate's Report to which the Defendant has objected. *See* U.S.C. § 636(b)(1)(C) (West 1993 and Supp. 2000); FED.R.CIV.P. 72(b).

Having thoroughly considered the entire case, all relevant law, and for the reasons stated herein, the Court shall GRANT the Defendant's motion for summary judgment. Accordingly,

1

the Court shall also REJECT the Report and Recommendation of the Magistrate Judge.

## I. Factual Background

On May 19, 2004, the Plaintiff, William E. Burke, filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, *et seq*, alleging that the Defendant, The Rochester Corporation, terminated his employment because of his age. Although his complaint contains Title VII claims and ADEA disparate impact claims, the Plaintiff appears to have abandoned them, focusing only on the ADEA disparate treatment claim. Accordingly, the Magistrate's Report only addresses the Plaintiff's ADEA disparate treatment claim. This Court will do the same.

The Plaintiff was employed by the Defendant from December 9, 1974 until March 17, 2003, when he was selected for termination due to a reduction in force ("RIF") brought about by a decline in business. The Plaintiff was then sixty years old. The Plaintiff was currently working as a mechanic in the maintenance department, under the supervision of Christopher Srozinski. He had also worked as a strander operator and an extruder operator. Two of the maintenance department's thirteen positions were selected for termination during the layoff. A voluntary severance package was offered to all employees in the department and was accepted by one employee, leaving one position to eliminate. The department then consisted of four electricians, aged 31, 41, 49, and 55; one machinist, aged 42; and seven mechanics, aged 31, 36, 43, 49, 60, 60, and 66.

Srozinski and John Iler, the general manager, conducted the reduction in force. In determining which position should be eliminated, they claim to have used a modified version of company policy consisting of five criteria: (1) experience as a machinist; (2) experience as an

2

electrician; (3) relative job skills and performance as an electrician, machinist, or mechanic; (4) disciplinary warnings and write-ups; (5) whether more experienced employees were available in the short to medium run to perform the job tasks of the particular position. Iler Affidavit ¶ 10. The otherwise standing company policy (the "TRC policy"), which differed from the five criteria actually used, called for the following criteria to be considered in determining which positions or employees to eliminate during a layoff: (1) the employee's job responsibilities in relation to the continued efficient operations of the company; (2) the employee's skill level; (3) the efficiency of the employee; (4) the employee's length of service. Iler Affidavit Exhibit A at 2. Notably, the five criteria actually used did not include the employee's length of service.

Ultimately, the Plaintiff's position was chosen for termination. The Defendant contends that this determination was based solely on the application of the five criteria. Based on the first two criteria, no electrician or machinist would be picked for termination, leaving only the possibility that a mechanic would be laid off.[1] As to the third and fifth criteria, the Defendant contends that the Plaintiff was clearly the least skilled of all the mechanics and that his duties were most easily assignable to other members of the maintenance department. Iler and Srozinski state in their affidavits that the Plaintiff lacked the skills to perform the full range of duties required of the other mechanics and that the duties he did perform were less demanding in skill sets than the duties assigned to the other mechanics. (Iler Affidavit ¶ 14; Srozinski Affidavit ¶ 19.) Of all the mechanics, contends the Defendant, the Plaintiff was the only one who had no specialized skills. (Mot. Summ. J. at 4.) Also, he was the only mechanic assigned OSHA related

---

[1] Iler and Srozinski state in their affidavits that electricians and machinists are more highly skilled than mechanics and are generally capable of performing the duties of a mechanic. Iler Affidavit ¶ 15; Srozinski Affidavit ¶ 18.

3

duties, and his janitorial and groundskeeping duties could be assigned to outside contractors. (Mot. Summ. J. at 4.) Thus, the Defendant argues that the Plaintiff's skill sets made him the obvious employee to terminate.

The Defendant also states that before terminating the Plaintiff, it gave him the opportunity to either return to his previous position as extruder operator or accept a severance package. (*See* Srozinski Affidavit ¶ 24.) Srozinski states that the Plaintiff told him that he did not want that position because it worked at his nerves and that he ultimately decided to not accept the severance package. (Srozinski Aff. ¶ 25, 33.) The Defendant admits that a document in the severance package erroneously classifies the Plaintiff as a machinist ("mach") rather than a mechanic ("mech"), but attributes the mistake to a clerical error. (Srozinski Aff. ¶ 30, 31.)

The Plaintiff disputes the version of events offered by the Defendant, asserting that he was ultimately terminated because of his age. The Plaintiff offers testimony from Michele Neal and Gary Hyde, the former a Rochester employee at the time of the termination and the latter a retired Rochester manager at the time, who say that Karen Yowell, the Human Resources Representative, told them that she had overheard Iler comment "to the effect that he couldn't have all these older people working here because they were all going to retire and he was going to have a bunch of older workers and no young ones." (Michele L. Neal Dep. at 14; Gary Hyde Dep. at 30.)

The Plaintiff also differs as to the circumstances surrounding the offer of the choice between the extruder position and the severance package. He contends that Srozinski asked him which he would prefer, without informing him of the possible layoff, and that he responded that he did not know because he needed to think about it. (William Burke Dep. at 32-34.)

4

Additionally, he states that a few days later Srozinski backed away from the offer and stated that the prior conversation did not mean anything and that he was just checking in case of a reduction in force. (Burke Dep. at 35.) Plaintiff testifies that he was never offered the extruder job again and that, although management knew that he did not like the extruder position, he never told them that he did not want it. (Burke Dep. at 54.) Plaintiff does not recall whether he told Srozinski that the extruder position "worked on [his] nerves." (Burke Dep. at 55). He now argues that this apparent withdrawal of the offer of the extruder position is evidence of age-based animus.

The Plaintiff also offers the testimony of Hyde to establish that the Defendant violated its own policy of treating seniority preferentially, thereby creating an inference of discrimination. Hyde testified that, while he was an employee at Rochester, senior employees would be allowed to "bump" less senior employees out of other departments in which they had experience and take their position before being terminated entirely. (Hyde Dep. at 18-19.) He also testified that, as a general rule, layoff was done according to a least-seniority-first rule.

The Plaintiff further takes issue with the characterization that he was clearly the least skilled. He admits that all the mechanics but one, the 36 year old James Loane, were more skilled than he was. He characterizes Loane as only a "little more" knowledgeable with skills that were "somewhat better [...] but not a great deal better." (Burke Dep. at 43, 48.) He also offers the testimony of Hyde, who characterizes Loane and Burke as being of equal skill. (Hyde Dep. at 38.) Hyde also believes that Loane should have been terminated because, unlike the Plaintiff, he lacked seniority and had once been terminated for failing a drug test. (Hyde Dep. at 38.) The Plaintiff offers this evidence to show that Loane should have been selected for

5

termination because of his lack of seniority, history of disciplinary problems, and only marginally better skills.

Finally, the Plaintiff disagrees as to his erroneous classification as a machinist rather than a mechanic in one of the severance package documents. He claims that the Defendant purposely misclassified him as a machinist in order to mask the age-based animus that motivated his termination. The only other machinist was 42 years old. Plaintiff claims that the misclassification made it look like he was not being terminated in favor of an employee outside the ADEA protected class.

The Defendant has filed a motion for summary judgment, arguing that there is no genuine issue of material fact for a trier of fact to decide.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Issues of material fact are genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court's function is "not . . . to weigh the evidence and determine the truth of the matter . . . [but to] determin[e] whether there is a need for a trial." *Id.* at 249-50. On a motion for summary judgment the court must view all inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. Discussion

6

Case 3:04-cv-00037-NKM-BWC   Document 22   Filed 09/23/05   Page 6 of 16   Pageid#: 227

## A. Burdens of Proof Under the ADEA

In order to establish a cause of action under the ADEA, a plaintiff must demonstrate that but for the employer's decision to discriminate against the plaintiff on the basis of age, the plaintiff would not have been discharged. *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995); *EEOC v. Clay Printing Co.*, 955 F.2d 936, 940 (4th Cir. 1992). The plaintiff has the initial burden of establishing a prima facie case of intentional discrimination by showing direct or circumstantial evidence of discrimination. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000). If the plaintiff seeks to establish a prima facie case by means of circumstantial evidence of discrimination, as the instant Plaintiff does, he must do so under the scheme established in *McDonnel Douglas v. Green*, 411 U.S. 792 (1973), as adapted to the relevant ADEA context. *See Smith v. Flax*, 618 F.2d 1062, 1066 (4th Cir. 1980). Once the plaintiff does so, the "burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.'" *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802-804). Upon such a showing, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual or unworthy of credence and that age had a determinative influence on the employment decision. *Id.*; *Reeves*, 530 U.S. at 141.

## B. The Plaintiff's Prima Facie Case

As an initial matter, the Court notes that the Defendant objects to the Magistrate's recommendation as to the applicable elements that the Plaintiff must show in establishing a prima facie case in the context of this particular reduction in force. The Defendant cites *Dugan v. Albemarle County School Bd.*, 293 F.3d 720-21 (4th Cir. 2002) as providing the applicable

7

standard, which requires that the Plaintiff show: (1) that he was in a protected class; (2) he was selected for demotion; (3) he was performing his job at a level that met the employer's expectations; and (4) that his employer did not treat the protected status neutrally, or there were other circumstances giving rise to an inference of discrimination. The Magistrate, however, found that the criteria laid out in *Stokes v. Westinghouse Savannah River Corp.*, 206 F.3d 420, 430 (4th Cir. 2000) control, requiring the Plaintiff to show: (1) that he was protected by the ADEA; (2) he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force including some persons in the group who were substantially younger than him and who were performing at a level lower than that at which he was performing. The Court agrees with the Magistrate.

The Defendant objects that the *Stokes* test does not apply to this case because it was created for RIF situations where performance is the stated reason for termination, while in this case the Plaintiff was performing his job satisfactorily. (Def.'s Obj.'s at 11 n.2) Yet this objection misses the function served by the test in *Stokes*. Ultimately, the test in *Stokes* is concerned with the *relative* performance of the employees within the group selected for reduction, not whether the plaintiff is meeting the employer's expectations. Indeed, employees in a RIF context are usually meeting the employer's performance expectations. *See Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315 (4th Cir. 1993). In cases involving a layoff of an employee from a group selected for reduction, the employer's determination will naturally involve comparing the employees against each other. In fact, this is exactly what the Defendant did. Thus, it makes sense for the test for establishing a prima facie case to include a comparison of how the plaintiff

8

stacked up against other employees. The test cited by the Defendant does not do that, but instead includes a much broader inquiry about whether the employer treated age neutrally. That approach is not as well tailored to the allegations of this case and is more appropriate where comparisons between employees are not needed. Therefore, the Court finds that the *Stokes* test for establishing a prima facie case controls.

Satisfaction of the first two elements of the *Stokes* prima facie case is not in dispute. The Defendant does contend, however, that the Plaintiff does not meet the third criterion because he was not performing at a level substantially equivalent to the lowest level of those in the group retained. Thus, at issue is whether a reasonable jury could find that the Plaintiff was performing at a level substantially equivalent to Loane, who appears from the evidence presented to be the lowest performing member retained in the maintenance department. Iler and Srozinski state in their affidavits that Loane was qualified to perform a variety of tasks that the Plaintiff was unable to perform and that the Plaintiff's skill sets did not allow him to perform the full range of duties required of other mechanics. (Iler Aff. ¶ 14; Srozinski Aff. ¶ 17.) Moreover, the Defendant points out that the Plaintiff admits that Loane's skills were "somewhat better [...] but not a great deal better." (*See* Burke Dep. at 43, 48). However, Hyde states that the skill levels of the Plaintiff and Loane were equal and notes that Loane had a worse disciplinary record than the Plaintiff because he had been terminated previously for failing a drug test. (Hyde Dep. at 38.) The Magistrate found that these last two points mentioned by Hyde raise a genuine issue of fact as to the third criterion because Iler and Srozinski's assessment of the Plaintiff and Loane is put in dispute and because disciplinary history is an element of Loane's work performance that should be considered in addition to skill levels. The Court agrees. Hyde's comparison of the

9

skill sets of the Plaintiff and Loane is in conflict with the assessment of Iler and Srozinski, creating an issue of material fact as to which reasonable minds could disagree. Moreover, the Plaintiff's cleaner disciplinary record could lead a reasonable jury to believe that, all things considered, he was performing at a level substantially equal to Loane, despite having a marginally smaller skill set. Thus, the Plaintiff's evidence presents a genuine issue of material fact as to whether he was performing at a level substantially equal to that of Loane.

The above analysis concerning disciplinary history also leads the Court to conclude that there is a genuine issue of fact as to whether Loane was performing at a *lower* level than the Plaintiff, the fourth criterion of the Plaintiff's prima facie case. Certainly, a reasonable jury could conclude that Loane's weaker disciplinary record outweighs any advantages he might possess in terms of skill sets, resulting in him performing at an overall lower level than the Plaintiff. Thus, the Court concludes that the Plaintiff's evidence satisfies this fourth criterion and that he has made out a prima facie case of discrimination.

### C. The Defendant's Legitimate Non-discriminatory Reasons

Because the Court finds that the Plaintiff has established a prima facie case of discrimination, the Defendant must now articulate some legitimate, non-discriminatory reason for the Plaintiff's termination. *Burdine*, 450 U.S. at 252-53. The Defendant has met this burden by providing evidence that it followed five objective, age-neutral criteria in deciding who to terminate and by producing evidence that the Plaintiff was the least skilled mechanic in the maintenance department.

### D. Evidence That The Defendant's Reasons Are Pretextual

Next, the Court must decide whether the Plaintiff has created a genuine of material fact as

to whether Defendant's proffered reasons for terminating him are pretextual and unworthy of credence. *Reeves*, 530 U.S. at 143. The Magistrate's Report and Recommendation finds that the Plaintiff has offered three factual bases for establishing a genuine issue of material fact with respect to pretext: (1) the departure from the TRC's stated policy of considering an employee's length of service when conducting a RIF; (2) the departure from a policy of giving more senior employees bumping rights; and (3) and the Defendant's failure to consider Loane's disciplinary record in deciding who to terminate. The Defendant objects as to each of these bases.

The Court will first consider the Defendant's departure from the policy stated in the TRC giving consideration to an employee's length of service. Although the five criteria which the Defendant claims it used in determining which position to terminate are undoubtedly age-neutral, the policy from which the Defendant departed calls for an employee's length of service to be considered during a RIF. At issue, therefore, is when a departure from or modification of established company policy which gives favor to an employee's length of service can support a finding of discrimination, and if so, whether it does in this case.

In regard to an employer's deviation from established policy in discharging an employee, the Fourth Circuit has held:

> Failure to follow established procedures with respect to an employee's discharge has been held to support a finding of discriminatory discharge. However, deviation from established procedures creates no presumption of discrimination, especially when there is little other evidence supporting a finding of discrimination.

*Stiles v. General Elec. Co.*, No. 92-1886, 1993 U.S. App. LEXIS 2870, *11 (4th Cir. Feb. 12, 1993) (internal citations omitted).[2] Thus, the circumstances surrounding the employer's

---

[2] The Court notes that *Stiles* is an unpublished opinion and, as such, is not binding on this Court. *See* 4th Cir. R. 36(c). However, the Court does find *Stiles* to be persuasive given its

departure from established procedure are instrumental in determining whether the departure will support a finding of disparate treatment. For instance, *Stiles* involved a RIF where an employer disregarded established company policy that required supervisors to follow a set of "elaborate procedures" when conducting layoffs. *Id.* at 11. Instead of basing the layoffs on past performance evaluations and giving employees with more than twenty-five years of service "special placement consideration," as company policy required, the employer conducted the RIF by means of wholly subjective one-hour interviews. *Id.* at 3, 14. This ultimately led to the discharge of the plaintiff in that case, who had more than twenty-five years of service. The Fourth Circuit found that this failure to follow company policy helped the plaintiff raise a genuine dispute about whether the employer's reasons for discharge were pretextual. *Id.* at 12. However, the court was careful to indicate its reliance on the overall context of the deviation from established policy, noting that the plaintiff had raised a genuine issue of pretext "not because such evidence [of departure from established policy] creates a presumption of discrimination, but because [the employer] cannot point to an established, merit-based, and age-neutral system which guided the company's reduction in force." *Id.* at 12.

The instant Plaintiff's case rests the ability of a reasonable jury to adduce discriminatory intent from the fact that the Defendant departed from policies in a way that might have worked to the Plaintiff's disadvantage as an employee with a lengthy term of service. Such departures may well have done so, but to conclude that the Defendant's proffered reasons for the Plaintiff's termination are pretextual from this alone amounts to speculation and conjecture. *Stiles* makes clear that departures from established policy only help to raise genuine issues of fact as to pretext

---

similar factual context.

Case 3:04-cv-00037-NKM-BWC   Document 22   Filed 09/23/05   Page 12 of 16   Pageid#: 233

when there is other evidence of discrimination. See *Stiles*, 1993 U.S. App. LEXIS 2870 at **11-12. The Plaintiff, however, provides no evidence that would allow a reasonable jury to find that the departure from the TRC's consideration of seniority is suggestive of age-based discrimination. Although seniority will correlate with age to some degree, the two are not interchangeable, especially when the Plaintiff supplies no nexus between them. *See, e.g., EEOC v. Clay Printing Co.*, 955 F.2d 936, 942 (4th Cir. 1992) (noting that seniority might be a code word for age in some, but not all, cases); *Williams v. General Motors Corp.*, 656 F.2d 120, 130, n. 17 (5th Cir. 1981) ("Seniority and age discrimination are unrelated. . . . We state without equivocation that the seniority a given plaintiff has accumulated entitles him to no better or worse treatment in an age discrimination suit"). The Plaintiff's burden at this point is to produce evidence that the reasons for termination offered by the Defendant were not its true reasons, but were a pretext for discrimination. *Burdine*, 450 U.S. at 253. The mere fact that the Plaintiff may have suffered as a result of deviation from considerations of seniority does not create a genuine issue of fact unless there is some other evidence of discrimination. *Stiles*, 1993 U.S. App. LEXIS 2870 at **11-12.

The Plaintiff has not presented other evidence of discrimination sufficient to create a genuine issue as to whether age actually motivated the Defendant's decision to depart from the TRC and discharge the Plaintiff. The manner in which the Defendant deviated from the TRC is significant, most notably because the Defendant did what the employer in *Stiles* failed to do by replacing the standing company policy with a merit-based inquiry based on five largely objective, age-neutral criteria. Moreover, this new policy was a comprehensive system created to guide the RIF, not merely an application of the TRC *sans* consideration of seniority. The Court finds that

13

Case 3:04-cv-00037-NKM-BWC   Document 22   Filed 09/23/05   Page 13 of 16   Pageid#: 234

this tends to belie any suggestion that the Defendant removed consideration of seniority simply as a means of discriminating against the Plaintiff. It is also important to note that the Plaintiff does not provide any admissible evidence to challenge Iler and Srozinski's assertions that they made their determinations on the basis of these five criteria. The Plaintiff does present evidence which could plausibly suggest that the Defendant could have reasonably discharged Loane instead of him, including evidence that their skill sets were substantially equivalent, that Loane had a worse disciplinary record, and that Hyde would have retained the Plaintiff over Loane. Such evidence, however, is insufficient to make the required showing of pretext. It is of little import that Hyde would have retained the Plaintiff over Loane, for the fact that a plaintiff's coworkers believe that he "did not 'deserve' to get laid off is close to irrelevant." *Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231, 235 (4th Cir. 1991). The remaining evidence of substantially equal skill sets and different disciplinary records do not raise any suggestion of age-based animus either. The Plaintiff's evidence regarding skill sets suggests that, at best, his skill sets were equal to those of Loane, and his evidence of Loane's worse disciplinary record centers around one instance of termination for drug use. This evidence, in other words, is not so striking as to cast doubt on the Defendant's proffered reasons or suggest that age was the real reason for the Plaintiff's discharge. At most, it suggests that Loane may have been a better candidate for termination. This, of course, is an insufficient basis on which to allow this case to proceed to trial, as it would turn this Court into "a kind of super-personnel department weighing the prudence of employment decisions made by firms charged with employment discrimination." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

The Court also finds that the Plaintiff's evidence concerning the Defendant's purported

14

Case 3:04-cv-00037-NKM-BWC   Document 22   Filed 09/23/05   Page 14 of 16   Pageid#: 235

failure to follow the bumping policy, as outlined by Hyde, does not create a genuine issue of fact with respect to pretext. The bumping policy described in the Plaintiff's evidence is clearly designed to afford job protection to employees on the basis of seniority, which courts have repeatedly distinguished from age. *See, e.g., Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (holding that adverse decisions made on the basis of seniority do not violate the ADEA); *Clay Printing Co.*, 955 F.2d at 942 (distinguishing between age and seniority); *General Motors Corp.*, 656 F.2d at 130, n. 17. Thus, even assuming that senior employees were entitled to bumping rights, failure to follow this policy does not suggest that age-based animus motivated the Defendant's decision. *See Stiles*, 1993 U.S. App. LEXIS 2870 at \*\*11-12. This is especially true in light of the absence of other evidence of discrimination, detailed above, to suggest that preferences for seniority were circumvented in order to discriminate on the basis of age.

The Court will also consider the Defendant's objections to the portion of the Magistrate's Report and Recommendation wherein the Magistrate found that a jury could conclude that the Defendant ignored Loane's disciplinary record in order to retain him and discharge the Plaintiff on account of his age. The Magistrate based the finding that the Defendant ignored Loane's disciplinary record on its contention at oral argument that a jury could conclude that Loane started with a clean slate when he was rehired after being discharged for drug use. Although the Defendant's theory is that the Plaintiff's skill sets were the decisive factor in selecting him for termination, there is no evidence before the Court that the Defendant did not consider Loane's disciplinary history when conducting the RIF. Iler and Srozinski state in their affidavits that disciplinary warnings and write-ups were part of the five criteria considered when determining which position to eliminate, and the Plaintiff introduces no evidence to suggest that this was not

the case. (Iler Aff. ¶ 10; Srozinksi Aff. ¶ 13.) Thus, there is no basis in fact from which a jury could conclude that the Defendant circumvented consideration of Loane's disciplinary history in order to retain him and terminate the Plaintiff on account of his age.

Finally, the Court notes that neither the Plaintiff nor the Defendant have objected to the portions of the Magistrate's Report and Recommendation dealing with the remainder of the Plaintiff's evidence. The Magistrate concluded that the comments allegedly made by Iler and the misclassification of the Plaintiff as a machinist are both insufficient to establish pretext because the former is inadmissible as hearsay and the latter is simply not probative. Having thoroughly considered these matters, the Court stands in agreement with the Magistrate.

## IV. Conclusion

Having concluded that the Plaintiff has not presented sufficient evidence to create genuine issues of material fact as to whether the Defendant's proffered reasons for terminating the Plaintiff were pretextual, the Court will GRANT the Defendant's motion for summary judgment and SUSTAIN its objections. Accordingly, the Court will REJECT the Magistrate's Report and Recommendation. An appropriate order this day shall issue.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record and to Magistrate Judge Crigler.

ENTERED: _____
United States District Judge

_____
Date: Sept 23, 2005